The issue this morning is whether the NTSB acted arbitrarily and capriciously in denying my client, Mr. Diaz, a hearing on the merits of the FAA's claim that his mechanics certificate should be revoked. The standard of review here is critical and something on which the parties agree. In fulfilling its role of reviewing FAA decisions, the NTSB must apply clear and consistent rules. To do that, the NTSB must apply its prior precedential decisions in a clear and logical fashion. In other words, the NTSB acts in a quasi-judicial capacity. And in fact, the NTSB's decision in this very case mentions that predictability is an essential element of proper administrative action. Here we contend that the NTSB's decision in Grant controls because it specifies that a late answer shall be accepted by the administrative law judge so long as there is no prejudice to the opposing party, with two exceptions not relevant here today. The FAA, on the other hand, points to a couple of other decisions, the Browning and Heidenreich cases, which, without any discussion of the appropriate standard, state that a late answer should not be accepted unless the respondent can demonstrate good cause, which is a much more stringent standard under the NTSB decisions. Let me ask you a question. The Browning and Heidenreich cases state a clear rule, albeit without explanation, and they pertain directly to pleadings filed with the ALJ, whereas Grant, Hooper, whatever, apply to proceedings before the board itself. Now, our rules are quite different, for example, from rules that apply to pleadings filed in the district court. And no one would say that we're fine, we're, well, people could say we're being inconsistent. But it wouldn't be fair to say we were being inconsistent if we were to apply one set of rules to district court pleadings and another set to ours. So what is your response to that conundrum? Well, actually, I don't think it is a conundrum, Your Honor, because the Grant case did involve a late answer. The FAA's position is that Grant arose out of a different type of proceeding. There was an Equal Access to Justice Act proceeding in which a party is seeking attorneys' fees from the FAA. But so Grant did involve a late answer. It's dead on point, and it states a very broad policy view of the NTSB, which is any document other than a notice of appeal or a late appeal brief shall be accepted if there's no prejudice to the other party. I have trouble seeing that that's the rule. I mean, it – because when we decide something, we don't go through every possible application and say, well, it's – it applies only to this, but not to A, B, C, D, and E. We only decide the case, which isn't that what Hooper and Grant – I mean, Hooper did and Grant said it did? I mean, it only concerned a reply or a reply brief to it and a notice of appeal. Grant involved a late answer, Your Honor. I know Grant involved a late answer and it talked about Hooper as applying only to – Yes. But that's all that was before it. I mean – Well, that's correct. But in this case, we have a – we also have a late answer involved. I know. So it would seem to me that since Grant involved a late answer and stated quite broadly the NTSB's view of policy, that that case would control. But I think your task is easier than deciding which line of cases from the NTSB is correct, because even if the FAA has set forth a tenable, a cullable argument to the contrary under the Browning and Heidemar cases, all that that establishes is that the NTSB precedent is not clear and uniform. And we all agree that uniformity is the test. Predictability is the test. And so if all of us as lawyers and judges have to sit around and debate and ponder about which line of cases is correct and make very fine distinctions about those cases, then I submit to you that that precedent is not clear, uniform, and does not lead to a predictable result. And quite frankly, that's – on the main issue before you, I think it's really just that simple, that the FAA cannot and has not established that the NTSB's precedent clearly and uniformly justified the results here, which was to deny our client a hearing on the merits. This case doesn't involve factual findings or anything of the sort. Let me explore with you for a minute your statement that the answer in Grant is somehow similar to the answer to the initiation of the proceedings here. Isn't there a difference between an equal access to Justice Act request for attorney's fees at the end of the proceeding and the initiation of proceedings at the outset before the ALJ? Well, sure. They're different – they're different types of proceedings. They have different goals. But doesn't – wouldn't it make a – wouldn't it be a reasonable position for the agency to take with respect to how they're going to treat late answers in those two kinds of proceedings? Perhaps yes, Your Honor, but it's not the position the agency has taken in the past because the NTSB decisions have previously treated equal access to justice cases interchangeably with licensing cases. So for example, the Grant decision, which is the key decision on which we rely, that was an equal access to justice case. That case relied on Hooper and distinguished Hooper and how it treated a late pleading. Hooper was a licensing case. And then in two subsequent cases we cited in our brief, the Ferguson and Smith cases, both of those decisions were licensing cases, just like this case here today. And those cases cited that to Grant, an equal access to justice act case, as precedent. So while, yes, it might be a colorable argument to distinguish equal access to justice act matters on the one hand and licensing matters on the other, the Board's precedent contradicts that. And it – again, if the test is clarity, uniformity, and predictability, the agency can't suddenly change its rules about that in this very case and thereby deny the – deny Mr. Diaz a hearing on the merits. Furthermore, if you look at – I suggest looking at the rules, and there is very small difference and only a very small difference between the two rules, but it's not a material difference. So, for example, and actually the Board relied on the fact that an answer in an equal access to justice act case is optional and therefore somehow different than an answer in a licensing case. And it's true if you look at the rules that in the equal access to justice act regulations, the rules state that the FAA may file an answer, and in the equivalent rule about licenses, the respondent shall file an answer. Well, so that seems to support the argument. But if you dig just a little bit deeper in those very same rules, you find that the net effect of failing to file an answer is the same. It's the same as in any civil case that we're accustomed to, which is if the respondent or the defendant doesn't file an answer, then the tribunal may grant all the relief requested. So it seems to me that an answer is equally optional in either case if the respondent is willing to acquiesce in what the complainant is requesting. But you can't get to an attorney's fees request unless the respondent filed an answer at the outset. That's true, Your Honor. But that's not a basis on which the Board based its decision, and this Court's review is limited to the reasons the Board mentioned. And also there's no basis that I know of for that proposition in the Board's precedent. Now, in deciding this case, do you think we should ignore the letter that was mailed to counsel in which it is said the filing of a timely answer is a very important step in protection of the respondent's appeal rights? Can we ignore that and decide this case? I think it's not pertinent to the issues in front of you, and I would suggest to you the reason for that is that our issue on appeal concerns the Board's treatment of the answer assuming that it was late. So that is an assumption. Well, now, that's not quite. You think that we should decide this case and not mention that letter? You're free to mention it, but I don't think it's relevant to the standards that apply to a late answer. If we mention it, right, and we were to say you're out of luck, you're late, it would only stand for the proposition that, as Judge Reimer is saying, that if a party gets a letter, then they better not be late. If we do not mention it, then we're into this business of talking about the rules and the abstract, and what a lawyer ought to know by research and so on. But here, a lawyer is given a letter telling that lawyer, here's the rule, and it is very important. Now, you think we just ignore that? No, sir. It seems to me that in analyzing that letter, it would only apply if the court were to find or to rule that the good cause standard is the appropriate standard for considering whether to file a late answer, because that's something that a judge might look at in deciding whether there was good cause. Was there adequate notice to the court? Would it be good cause in the face of the letter or just good cause in the face of the rule? Do you know what I mean? Well, it seems to me that both the board's rules and the letter would be relevant to determining whether there was good cause for filing the answer late. Why did they decide this case without reference to the letter? Because the legal standard that the board should have applied under its precedent was to determine whether the FAA would be prejudiced by the late answer. Okay. All right. What would have taken place at a hearing on the sanctions issue if you had been allowed to have a hearing? Well, Mr. Diaz should have been allowed to explain that the charges of intentional falsification against him arose only out of his compliance, in good faith, with his company's procedures for replacing a stolen card. And both the ALG and the NTSB completely refused to consider that information because it would be pointless or because it could come to no good end. But there again, the board contradicted its precedent because as the FAA even concedes in its brief, the NTSB has made exceptions in the past and has changed the sanction sought by the FAA due to special circumstances. And, boy, I think this is getting... Well, in the response to the motion for summary judgment, there was documentation presented from his employer, if I'm not mistaken. I believe that was our evidence, Your Honor. Right. You submitted on his behalf. Yes, sir. And my question is just what else would you have offered at any kind of hearing? That was the proffer we made, so that's the record in front of you. I think the error is to look at the NTSB... But even if you were to look at all that and say this is what he has to offer in a way of mitigation, why can't the board say, well, in light of the action taken by the FAA, it's not enough to suggest that we should depart from the sanction guidelines? Because the board and the ALJ, if I read their opinions correctly, said that basically refused to accept the mitigation evidence at all, and that is contrary to the board's precedent, which does look at extenuating circumstances. Well, the ALJ addressed the mitigating evidence, I believe, if I'm not mistaken. Maybe I'm confusing the opinions, but one of them did. That might be true, but the way I read them, it was pretty categorical that this evidence was just not worthy of consideration. And I have to say that the board here adopted Rule 56 as being instructive, the Federal Rules of Civil Procedure, and I don't think it's fair for the ALJ to have granted summary judgment here on the question of mitigation, because it was not appropriate under Rule 56, number one. Number two, the paper record is not the same thing as having Mr. Diaz appear in court, present himself personally, present other witnesses who he can talk about in more detail what happened at the hangar pardon me, what happened at the company and supported his basis. So on mitigation, I think the actual hearing is significant. The ALJ should have been exposed to that process, and the board itself adopted Rule 56. It doesn't the rules don't provide for a trial by paper or by declaration as they could provide. There are courts who have that procedure. So your question is well taken, Your Honor, but I think the board having looked to Rule 56 and adopted Rule 56 as its procedure should follow that rule and grant our client a real hearing on the mitigation issue. The difficulty is that good faith would, even if proved, not trump intentional falsification. I mean, that's the difficulty, is whether it's material even if proved, even under Rule 56. I agree. That is difficult, but yet the board's precedent does include some cases where certificate holders were convicted of intentional falsification, and yet there were extenuating circumstances. So I would agree that it would be the exceptional case, that is what the board's precedent says, that it would be an extraordinary case where mitigation would be, where there would be mitigating circumstances to lead to a sanction other than revocation. But our view is that this is an exceptional case, and the ALJ should have heard the evidence in person. And all of the other evidence, there might have been other witnesses that would come forward and so on. And as you all know from hearing so many summary judgment appeals in Federal court, we were not obligated to put on our whole case to oppose a motion for summary judgment. We were just obligated to show that there's a genuine issue, a fact for trial. Okay. Thank you. Thank you. I'll save the remaining time for rebuttal. Okay. Mr. Dorey. May it please the Court. I am James Berry, and I represent the Federal Aviation Administration in this matter. The NTSB did not err in concluding that counsel for Mr. Diaz was required to show good cause for the acceptance of Mr. Diaz's untimely answer to the complaint. Mr. Diaz would have us accept a prejudice standard in connection with late-filed answers, but that is not how the board has held. This case, as this Court cited in its Gilbert decision, the NTSB is free to adopt and enforce a strict procedural rule so long as it applies a rule uniformly or with reasoned distinction. And here the board has applied a good cause standard to late-filed appeals or late-filed answers to complaints, and that standard is a good cause standard. In fact, pursuant to 49 CFR 82111A, the ALJ could grant Mr. Diaz an extension of time to file his answer only upon a showing of good cause. I note that counsel for Mr. Diaz indicates in his reply brief that the administrator could not raise Section 82111, but that's not true. In fact, one of the key decisions in this case, Heidenreich, relies on its authority. It relies as authority on 82111A. And, in fact, 82111A indicates the ALJ could grant Mr. Diaz an extension of time only upon a showing of good cause. And this position has actually been articulated in both Heidenreich and Browning. In both of those cases, the NTSB deemed allegations admitted where the Respondents failed to establish good cause to late-filed answers to complaints. Mr. Berry, that tends to go just to show that the NTSB would be within its rights to make that its policy decision, whereas if I understand it correctly, Mr. Diaz's that it hasn't done that. Rather, it's been inconsistent in taking a position with respect to answers, particularly relying on grant. Yes. I take it you disagree. Perhaps you might want to focus on why you disagree that that manifests inconsistency. I do disagree, Your Honor. Mr. Diaz relies primarily on the grant decision in his conclusion that the NTSB has applied inconsistent standards with respect to answers. But, in fact, the decision in Hooper and the four other cases he relies upon, which involve reply briefs, do not involve what's at issue here, which is an answer to or late-filed answer to a complaint. And I think all of these cases are best understood in the context of Hooper. Well, he says an answer is an answer. I mean, it doesn't matter what it's an answer to. It's an answer. Yeah, an answer, though, is not just an answer under the NTSB precedent. And, in fact, the Board had a practice of applying a prejudice standard, or the Board's practice with respect to applying a prejudice standard to reply briefs preexisted the Hooper decision. And so Hooper, when Hooper was actually decided, Hooper did not affect the Board's position that late-filed reply briefs could actually still be accepted on a prejudice standard. And, in fact, reply briefs are indeed permissive pleadings. They're not required pleadings under Section 82148C of the Board's rules. In fact, reply briefs may be filed by a litigant. They don't have to. There's no shall requirement. And this distinction is significant because reply briefs may assist the Board in resolving issues. However, appeal briefs are necessary to raise and frame issues. You know what, that's perfectly clear. My question was, he says an answer is an answer, and Grant was an answer. Therefore, there's an inconsistency in the way the Board treats answers. Forget reply briefs. Except the key thing here is that Grant relies on a reply brief case in reaching its decision. Grant cites the Kelso decision as authority for its conclusion that the prejudice standard is appropriate with respect to late-filed answers to EJA applications. And, again, that approach only makes sense because an answer to an EJA application is also permissive, just like a reply brief is permissive. That is, EJA decisions are normally decided on paper, unlike the hearings under 821 of the Board's rules. In addition, answers to EJA applications respond to issues that have been raised in the petitions themselves. So petitions themselves are truly analogous to other types of required pleadings. During my preparation, I think it's important to note that during my preparation for this oral argument, I did come across one case, one NTSB case, where the Board did not apply the good cause standard to a late-filed answer to a complaint. This was a 1968 NTSB decision. It's at 1 NTSB 378. Now, that decision has to be taken in context. Back in the late 60s, the NTSB drew a distinction between airmen who were represented by counsel and those who were not represented by counsel. In John Gable, 1 NTSB 654, a 1969 case, the NTSB deemed allegations admitted where a respondent who was represented by counsel failed to establish good cause for the acceptance of a late-filed answer to a complaint. By the same token, in Administrator v. Papert, which is 1 NTSB 378, a 1968 case, the NTSB basically allowed the filing of an untimely answer to a complaint on the grounds that airmen who defended themselves were not held to the same standard of knowledge as those represented by counsel. The NTSB has changed from that position. Back in the early 80s, as I could discern from the cases cited throughout this proceeding, the NTSB began to issue its case management letter. And now the case management letter is a critical aspect of this case, too, because Mr. Diaz's counsel received the case management letter, which required, which actually included the Board's rules of practice. It set forth the caution that the failure to file may result in the allegations being deemed admitted. And it also indicated the importance, cautioned the importance of filing answers as a step in protecting rights. After the NTSB began as a practice to issue this letter, the NTSB changed with respect to treating pro se respondents and respondents represented by counsel differently. And, in fact, in cases that I cite in my brief, Taylor decision, which is on page 32 of my brief, the Blazing decision is also on page 32, and Sanderson, which is, I believe, also on 32. All of those cases involved pro se litigants who failed to file answers and whose allegations were deemed admitted. So all of these respondents also received case management letters. So, in effect, the Papert decision, which I feel obligated to note, has effectively been overruled by more recent Board decisions, which treat pro se respondents and respondents represented by counsel as the same. In fact, the Browning decision, the respondent was represented by counsel. He failed to timely file an answer. He received a case management letter, and yet the allegations were deemed admitted because he failed to show good cause for the late filing of the answer to the complaint. And as I mentioned earlier, Hooper, I guess the key underpinning to Hooper was the irregular character of the Board's practice with respect to appeal briefs filed with it, notices of appeals, and requests for extensions of times to file appeal briefs. Now, Mr. Diaz cannot reasonably argue that it's impossible to discern that the Board applied a good cause standard with respect to late filed complaints. Again, we have the regulation, and actually we have A2131C, which he received as an attachment to the case management letter indicating that answers to complaints shall be filed or else the litigant runs the risk of having the allegations deemed admitted. We have A2118A, which provides that where the litigant files a petition or a motion for a more definite statement, if that more definite statement is denied, the litigant must file within ten days after the denial of the motion for a more definite statement. In fact, Judge Garrity below denied Mr. Diaz's request for a more definite statement. In so doing, Judge Garrity issued an order to file answer specifically stating that Mr. Diaz was required to file an answer within ten days of the issuance of that order. In addition, Mr. Diaz, as I mentioned earlier, received a case management letter. So Mr. Diaz cannot be heard to rely on Hooper to suggest that he was somehow misled by the Board's practice. In fact, again, the Board's practice with respect to late filed answers to complaints has been consistent. They have applied a good cause standard with the exception of that one 1968 case, which is effectively overruled. I also note, I also find it important to note that I cited the day decision on page 28 of my brief. For the general proposition that the Board applies a good cause standard to pleadings. Now, day involved an answer to a petition for review of a denial of errant medical certification. It did not, as Mr. Diaz's counsel correctly notes in his reply brief, day does not involve a late filed answer to a complaint. And day, the Board determined that the administrator had good cause for the filing of this, of the untimely answer to the petition for review. The Board, however, in a case mentioned below called Peash and Burrell, which is at 2 NTSB 969, a 1970 case, did not appear to apply a good cause standard with respect to late filed answers to the denial of errant medical certification. However, the Board drew a distinction between both, between actually in concluding that good cause or in appearing to conclude that good cause was not the standard that they were going to apply to late filed answers to the denial of errant medical certification. The Board noted that an answer to a petition for review of an application for errant medical certification is more of a pro forma response than a pleading essential to the framing of the issues on review. And in effect, that also is reminiscent of a reply brief and an answer to an EJ application. That is, it's not, this is a document that's not necessary for the framing of issues. It merely is a response, is a pro forma pleading. And that's because in those particular types of cases where the, in those cases, the Federal air surgeon denies errant medical certification to an individual, sets forth the basis for that denial, and also sets forth the regulatory section upon which the denial is based. And it's up to the respondent to appeal from that. That appeal is akin to an answer. In turn, the FAA must, or the FAA is required, in effect, to file an answer to the petition for review. But as the Board noted in Burrell, that is a pro forma response. And so by contrast, in this particular case, we have an answer, a late filed answer to a complaint, which is an answer, a pleading which is necessary for the framing of issues. It sets forth the direction that the respondent intends to go with respect to defending this case. It also sets forth affirmative defenses. The NCSB did not err in affirming the ALJ's grant of summary judgment in this case as well. In fact, Mr. Diaz produced nothing that would suggest that the sanction of revocation should be mitigated. What Mr. Diaz did in his motion for summary judgment, particularly at record pages 422 and 426, was submit evidence that he suggested would show that he completed the post-maintenance final run checklist based on information that the work had been done. In other words, what he did, what he's suggesting is that this so-called mitigating evidence is really just a frontal attack on the allegations that had already been deemed admitted. And in fact, what had been deemed admitted was that the respondent admitted that he made entries in the post-maintenance final run checklist that inspection items and underlying maintenance had been accomplished when he knew that these things had not been done. The issue had been resolved by the ALJ in his order deeming the allegations admitted, and therefore they were not ripe for review during the sanction phase of this hearing. The allegations deemed admitted supported a violation that respondent violated 14 CFR section 4312A1. Under FAA sanction guidance, revocation is the appropriate sanction for an act of intentional falsification. And the NTSB is required under 49 U.S.C. section 44709D3 to defer to the FAA sanction guidance based revocation unless it's arbitrary, capricious, or otherwise not in accordance with law. And it's clearly not unreasonable in this case. In fact, this Court has issued two decisions, Beauregard and Olson, which have affirmed the NTSB's determination and the FAA's determination that revocation is the appropriate sanction for violations of section 4312A. I hasten to add that on footnote 17 of my brief, page 46 of my brief, I included exceptions to revocations for intentional falsification. I hasten to note now that it's important for me to add that there is one more exception which is not applicable to this case. In Compliance and Enforcement Bulletin number 90-2, which is in FAA Order 2150.3A, which is where the sanction guidance table is also included, I discovered during my preparations for this oral argument that the falsification of 1D UI conviction or the falsification of simple possession under FAA policy results in the revocation of the medical certificate, because the falsification is actually made on the application for airman medical certification, but a suspension of varying lengths for the operational certificate. So that's an additional circumstance where suspension is appropriate under FAA policy. Let me see if I understand all the lingo that I'm exposed to here, because it's a little out of line with what we're accustomed to in the judicial process. Now, I take it that the FAA makes its investigation and concludes by entering an order and serving it on, in this case, the mechanic, right? Correct. Then he has a limited period of time to effectively file a notice of appeal. Correct. And he files that notice of appeal with the National Transportation Safety Board. That's correct, and that's the Board of Jurisdictions. So that's the jurisdictional instrument. The jurisdictional instrument is his notice of appeal. That's correct. And in this instance, that was timely. That's correct. And then these regulations require that the FAA file its order. File its complaint. Basically what the FAA does is file the order as a complaint to the NTSB. Well, it files its order, and now we call the order a complaint. Correct. But it's the same piece of paper or contains the same language as the order. That's correct. And it has 10 days to do that. Yes, Your Honor. Do we have any cases dealing with the timeliness of what the FAA has done? With respect to complaints? Yes. Yes. The FAA, the NTSB has uniformly applied a prejudice standard with respect to complaints. So that, if I may interject here, the reason is because the NTSB has, in effect, considered complaints to be, in effect, carbon copies of the order itself. I understand. And so, therefore, the Respondent's on notice. I understand. But it has leeway to be a little bit late in the sense that if it doesn't cause anybody prejudice, it can do it when it gets around to it. Now, that's a fair statement, is it not? Yes, Your Honor. And then the filing of the answer generates issues of fact, I take it. That's what's contemplated. That's correct, Your Honor. And the answer, in drafting the answer, the mechanic in this case is free to put in any defenses he finds lawful, right? He can put in both admissions and denials, as well as affirmative defenses. And in this case, he set forth 12 affirmative defenses in the answer he finally filed. But the jurisdictional instrument in all of this is his initial notice of appeal. Correct, Your Honor. And all else is just a matter of doing things within the scope of what the board has jurisdiction to do. And that includes filing appeal briefs and notices of appeals, which were addressed in the Hooper decision, in which apply a good cause standard. All right. Now, in the letter that you've referred to, is there any deliberate reason you can think of for the use of the word may, where it says failure to answer may be deemed an admission? It may be deemed a, yes. It's a failure of? So it may or may not be. Well, I would submit that if the respondent establishes good cause for the showing of or for the late filing of an answer to a complaint, then the answer itself may be accepted. Okay. So you think that he is somehow told that failure to answer may be deemed an admission unless you can show cause, good cause? Correct, Your Honor. Not saying so. That's what it's to mean. Well, that's just one piece, Your Honor. Of course, there's other elements, too. Okay. Thank you. I think I understand the lingo now. Okay. You're welcome, Your Honor. Anything further? I don't think so. Thank you. Thank you. I'd like to bring you back to the standard of review, which is that the NTSB has to show or, pardon me, that the FAA has to show NTSB decisions are clear and uniform. And Mr. Berry just made really a quite elaborate new argument in his oral argument that I had never heard before. It's not in his brief. And he also, I think, said something which is incorrect in that the rule argument, the Section 821 argument, is before you. That's the rule that we believe applies to prospective extensions of time. A party may request extensions of time before the document is due. And Mr. Berry says that that is correctly in front of you. I disagree because the Federal case law is quite clear that this Court's review is limited to the face of the NTSB decision, and it should review the rationale that the NTSB actually gave. And if that reasoning doesn't withstand scrutiny, then the decision is vacated and the case goes back to the NTSB on remand. So I think neither that argument about the rule is properly before you, nor are the new arguments that Mr. Berry put in front of you. But I have to say that I'm just more confused about the NTSB precedent, having listened to that argument, than I was before. And it is really very difficult, in my opinion, to say that the NTSB precedent is clear and uniform about how the Board will treat a late answer. And therefore, the prejudice standard should apply. And there was clearly no prejudice to the FAA here. We set forth in the brief how slow the underlying matter proceeded. And the answer here was filed only 16 days late, while the FAA let the case language for as long as a year at a time. So there was no prejudice to the FAA. And given that the case law is not clear that such a short delay in filing the answer would lead to the impossibility of filing on a late basis, I think this Court is obligated under the governing standard of review to hold that the NTSB precedent cannot support its decision here. Thank you. Counsel, the matter just argued will be submitted.
judges: Leavy, Rymer, Paez